UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DEBBIE L. ALDRICH,

                                 **Plaintiff,**

-against-                                                                   5:08-CV-402

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                                 **Defendant(s).**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**


**DECISION & ORDER**

Debbie L. Aldrich ("Plaintiff"), brought this action pursuant to the Social Security Act ("Act"), 42 U.S.C. §§ 405(g), 1383(c)(3), to review a final determination of the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for Supplemental Security Income ("SSI") benefits. Presently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

**I.    Facts**

    **a.    Procedural History**

Plaintiff applied for SSI on January 21, 1998, October 2, 1998, and October 29, 2001. (Tr. at 14.)[1] On all three occasions, the claim was denied at the initial determination level. On the first

---

[1] "Tr." refers to the Administrative Transcript on record.

1

instance the claim was also denied at the reconsideration determination level and was not appealed. On the second date a request for hearing was filed but a hearing was never held, and in 2001, the claimant did not appeal the determination. (Tr. at 14.)

In May 2003, Plaintiff filed for disability insurance benefits, but the claim was denied and she did not appeal the determination. (Tr. at 14.) Plaintiff then filed another application for SSI on May 20, 2003. (Tr. at 14.) She was denied benefits on July 30, 2003 and filed a request for a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 14.) Plaintiff was represented by a representative from the Department of Social Services (Tr. at 687), a non-attorney, at the hearing held on December 10, 2003 (Tr. at 15). On January 12, 2004, ALJ Richard Maddigan (Tr. at 459) denied Plaintiff's request for Social Security benefits (Tr. at 486). A request for review by the Appeals Council was submitted on behalf of Plaintiff and was subsequently denied. (Tr. at 486.)

Plaintiff then filed a new application for SSI on August 14, 2004, which was denied. (Tr. at 496-499.) Plaintiff then requested a hearing by an ALJ (Tr. at 500) which occurred on July 12, 2005 (Tr. at 699-720) and this time Plaintiff was represented by an attorney (Tr. at 699). ALJ Robert Gale found that the Plaintiff was not disabled under the Act and denied the request for SSI on January 26, 2006. (Tr. at 483, 494.) The decision of the ALJ became the Commissioner's final decision in the case when Plaintiff's request for review was denied on April 4, 2008. (Tr. at 478-480.) Plaintiff commenced this civil action on April 10, 2008 requesting review of the Commissioner's decision. (*See* Complaint.)

    **b.**    **Educational and Vocational History**

Plaintiff was born on February 7, 1961. (Tr. at 703.) She has an eighth grade education and had two unsuccessful attempts at obtaining her General Equivalency diploma ("GED"). (Tr. at

705.) She received no vocational training (Tr. at 705) and has no computer skills (Tr. at 705). Her past work experience includes a job as a waitress for three years, a cashier at a fast food restaurant for two years, a home aide for two years, and a house aide at a motel for a few months. (Tr. at 146.)

Plaintiff's most recent employment was as a housekeeper, for which she earned $270.00 a month in 2001, and a total of $1,608.36 in 2002. (Tr. at 61, 72, 76.) She worked as a babysitter in 2003, but substantial gainful employment did not arise from this. (Tr. at 16.) Plaintiff worked afterwards as a dishwasher in order to be eligible for social services/public assistance, but she terminated that employment due to pain, and has not held a job since.[2] (Tr. at 706, 707.)

### c.   Medical History

Plaintiff fell on ice in 1996 while on her way to work (Tr. at 77), and has since complained of problems and pain in her lower back, hips, spine, and bone spurs in her feet (Tr. at 17). Furthermore, plaintiff has arthritis in her hands, fingers, arms and shoulders. (Tr. at 89.) Plaintiff also has depression and anxiety attacks, which bring about difficulty in breathing. (Tr. at 89.)

The Plaintiff visited Dr. Miriam Ragab at the Pulaski Health Center in October of 2000, complaining of pain to her legs which was radiating from pain in her lower back. (Tr. at 17.) By way of x-rays, Dr. Ragab later diagnosed Plaintiff with arthritis of the sacroiliac joints and prescribed Ultram and Motrin for her pain. (Tr. at 17.) During Plaintiff's treatment, she was prescribed Acetaminophen, Ibuprofen and Propoxy for pain, and Paxil for depression. (Tr. at 148-49.)

On October 8, 2001, during an examination at Pulaski Health Center, Plaintiff was

---

[2]  It is unclear whether this work-fare was completed in 2004 or in early 2005, but either way, it is irrelevant for income purposes, and relevant to the point that it shows that she was still able to complete some type of job more recently than 2002. (Tr. at 16, 487-88.)

3

diagnosed with degenerative joint disease of the lumbar spine and was prescribed Relafen. (Tr. at 17.) Then, on October 16, 2001, Plaintiff was assessed with bilateral hip pain due to degenerative joint disease of the lumbar spine. An examination on November 17, 2001 revealed tenderness of the lumbar region and the left hip. (Tr. at 17.)

Dr. Ganesh examined Plaintiff on December 27, 2001. (Tr. at 395.) Plaintiff was complaining of pain in her lower back, spine, hips, and feet. (Tr. at 395.) Dr. Ganesh's evaluation revealed that Plaintiff could squat and walk on her heels and toes without difficulty, that she had full flexion and extension movements with no spinal or joint tenderness, and that she had full motion of her hips. (Tr. at 397.) X-rays of the hips were normal and also revealed that the vertebral body heights and disc spaces of the spine were maintained at all levels. (Tr. at 397.) Plaintiff was diagnosed with chronic lower back and hip pain. (Tr. at 397.)

Plaintiff underwent a psychological evaluation by Dr. Shapiro on January 18, 2002. (Tr. at 220.) Plaintiff complained of loss of appetite, sleep disturbance and worries over her financial situation. (Tr. at 221.) Dr. Shapiro noted that Plaintiff was well-groomed, her mood was appropriate, and her attention and concentration were intact. (Tr. at 221, 222.) Plaintiff was diagnosed with adjustment disorder and mixed anxiety and depression. (Tr. at 223.)

On February 8, 2002, Upstate Medical University of New York wrote an orthopedic clinic note that found a diagnosis of likely Fibromayalgia and possible lumbar disc disease. (Tr. at 17.) On August 1, 2002, a state agency consultant, Dr. Shayevitz, examined Plaintiff and found lumbar tenderness and right and left SI notch tenderness, as well as tenderness in the hips and heels on pressure. (Tr. at 232, 233.) She also found that Plaintiff could flex down and touch her toes and that leg raises caused no back pain but did cause slight pelvic and knee pain. (Tr. at 232.) Dr.

Shayevitz diagnosed the Plaintiff with "[l]ow back pain, neck pain, tension headache, heel pain, and shoulder pain with very few physical findings." (Tr. at 233.)

On August 1, 2002,. Plaintiff was also examined by Dr. Barry, a licensed psychologist. (Tr. at 387.) Plaintiff complained of anxiety and nerve problems, trouble sleeping, a decreased appetite, irritability, and crying episodes. (Tr. at 387, 388.) Dr. Barry's examination indicated that Plaintiff's socials skills were fair, her speech was rapid but clear, her thought processes were coherent and her mood was anxious, nervous, fidgety, and tense. (Tr. at 388, 389.) Dr. Barry diagnosed Plaintiff with adjustment disorder with mixed anxiety and depressed mood. (Tr. at 390.) On June 30, 2003, Plaintiff underwent a second evaluation by Dr. Barry. (Tr. at 383.) Plaintiff again complained of sleep disturbance, depression due to her pain, and anxiety and decreased energy. (Tr. at 384.) Dr. Barry again diagnosed Plaintiff with adjustment disorder with mixed anxiety and depressed mood. (Tr. at 386.)

On August 8, 2002, Dr. Morog completed a Psychiatric Review Technique form which reflects that Plaintiff has an effective disorder which results in mild restriction of her daily living activities, moderate difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence or pace. (Tr. at 245.) Based on the evidence presented to her, Dr. Morog determined that Plaintiff has mild to moderate psychiatric limitations and that she is capable of simple work on a sustained basis. (Tr. at 251.)

Plaintiff underwent a second orthopedic examination by Dr. Ganesh on June 20, 2003. (Tr. at 391.) Dr. Ganesh found that Plaintiff's hand and finger dexterity was intact, that her grip strength was 5/5 bilaterally, and that Plaintiff's cervical spine revealed full flexion, extension and rotary movements. (Tr. at 392.) Furthermore, Dr. Ganesh found that Plaintiff had a full range of motion

5

of her shoulders, elbows, forearms, and wrists and that she had no joint inflammation, effusion, or instability in her lower extremities. (Tr. at 392, 393.) Dr. Ganesh also stated that Plaintiff had no gross limitations to sitting, standing, walking, climbing, or the use of upper extremities. (Tr. at 393.)

Plaintiff continued to visit Dr. Ragab for different pain ailments. (Tr. at 17.) At a visit on November 18, 2003 (Tr. at 447), Dr. Ragab found no impression in the sacrum and coccyx (Tr. at 444, 445), and no impression in the left ribs (Tr. at 446). Dr. Ragab did however note that Plaintiff could only sit, stand, or walk for one hour in an eight hour workday. (Tr. at 448.) Furthermore, Dr. Ragab found that Plaintiff's use of her hands and feet were affected so that she could only function with and use them occasionally (Tr. at 448), that Plaintiff could only lift up to ten pounds occasionally (Tr. at 449), and that Plaintiff could never climb, stoop, crouch, kneel or crawl (Tr. at 450). During a consultative examination on September 2, 2004, Dr. Ragab noted that Plaintiff could occasionally lift up to ten pounds, could stand or walk for two hours each day, that she could sit for up to four hours a day, and that her pushing and pulling were limited if she was required to bend over for something. (Tr. at 637.)

On September 15, 2004, Plaintiff underwent another consultative psychological examination with Dr. Shapiro. (Tr. at 646.) Plaintiff reported that back pain made her unable to work, and that she still had trouble sleeping, a decreased appetite, and depression due to her inability to work. (Tr. at 646, 647.) Upon evaluation, Dr. Shapiro found that Plaintiff's psychiatric symptoms were mild in nature and typical of someone in Plaintiff's position. (Tr. at 649.) Furthermore, Dr. Shapiro found that Plaintiff was able to perform all of her own daily living and personal needs independently. (Tr. at 649.) Dr. Shapiro was of the opinion that Plaintiff was able to carry out simple instructions,

maintain attention and concentration for task, attend to a routine, maintain a schedule, learn new tasks, make appropriate decisions, interact appropriately with other individuals, and deal with stress. (Tr. at 489.)

Plaintiff underwent another consultative exam with Dr. Ganesh on October 26, 2004. (Tr. at 651.) Plaintiff complained of back pain with prolonged sitting and pain in her feet when she was standing. (Tr. at 651.) Dr. Ganesh found that Plaintiff was under no acute distress, that her movements were brief, and that she was able to walk on her heels but not on her toes. (Tr. at 652.) Dr. Ganesh also found that there was spinal and paraspinal tenderness, but x-rays showed no bony or disc space pathology. (Tr. at 653.) Dr. Ganesh noted that there were no gross limitations to Plaintiff's sitting, standing, walking, or climbing and that she had mild limitations to lifting, carrying, pushing, and pulling. (Tr. at 653.)

In July 2005, Dr. Ragab had the same opinions as to Plaintiff's limited ability to lift (ten pounds), stand (two hours), sit (less than six hours), and push and pull. (Tr. at 490.) Dr. Ragab determined that Plaintiff's limited range of motion of the spine was due to bilateral paraspinal lumbar spasm, and that Plaintiff also had mild anxiety. (Tr. at 490.) However, Dr. Ragab stated that Plaintiff "NEEDS to work some to maintain her current state of well being but it is not my opinion that she is employable for full time work; 15-20 hours/week, she should be able to handle with medical help." (Tr. at 490.)

  **d. Testimony Before the ALJ**

A hearing (the second SSI hearing) was held before the ALJ on July 12, 2005. (Tr. at 486.) At that time, testimony was taken from Plaintiff. (Tr. at 486.) Plaintiff testified that her "number one medical problem" is her lower back. (Tr. at 709.) She described a pain that starts in her feet,

7

creating spurs, and therefore she can only stand for a short period of time. (Tr. at 709.) She further testified that the pain is severe and constant, and that when she is doing a task, chore, or even walking, she has to take frequent breaks to sit down and rest. (Tr. at 709, 713.) Furthermore, she stated that she has pain in the front of her feet when she walks, that her left side of her body is in constant pain, and that even laying down is uncomfortable. (Tr. at 709.) Plaintiff testified that she could walk two blocks before she needed to rest, stand and sit each for thirty minutes before she had to move, and could lift about ten pounds although carrying a gallon of milk bothered her. (Tr. at 713, 715, 716.) Plaintiff informed the ALJ that her last job was working in the dish room at a nutrition site in early 2005 in exchange for public assistance, but that she was sanctioned in May 2005 by Social Services for quitting the job due to her pain. (Tr. at 706-08.) Plaintiff has had no income or public assistance since that time. (Tr. at 708.)

     e.    **ALJ Analysis**

The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The administrative regulations established by the Commissioner require the ALJ to apply a five-step evaluation to determine whether an individual qualifies for disability insurance benefits. See 20 C.F.R. §§ 404.1520, 416.920; see also Williams v. Apfel, 204 F.3d 48, 48–49 (2d Cir. 1999); Bush v. Shalala, 94 F.3d 40, 44–45 (2d Cir. 1996).

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment...which is listed in Appendix 1 of the regulations...the [Commissioner]

8

presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Barry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).

In the first step of the five-step analysis, the ALJ found that Plaintiff had not engaged in substantial gainful employment or activity since the application date of August 14, 2004. (Tr. at 486, 493.) At step two, the ALJ determined that Plaintiff's degenerative lumbar disc disease and anxiety constituted severe[3] impairments. (Tr. at 493.) At step three, the ALJ determined that Plaintiff's impairments failed to meet or equal the level of severity of any impairment listed in Appendix 1, Subpart P, 20 C.F.R. § 404.1520(d). (Tr. at 493.) At step four, the ALJ found that Plaintiff did not retain the residual functional capacity ("RFC") to perform any past relevant work because she could only lift or carry twenty pounds occasionally and ten pounds frequently, stand or walk four hours out of an eight hour day, sit for six hours in the same time period with breaks to change posture, and occasionally kneel, crouch, and stoop. (Tr. at 493.) At step five, after consulting the Medical-Vocational Guidelines Rule 201.24, the ALJ found that there are a significant number of jobs in the national economy that Plaintiff can perform at the sedentary level[4]. (Tr. at 492, 493.) As a result, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. at 492, 493.)

The decision of the ALJ was affirmed by the Appeals Counsel. (Tr. at 483.) Plaintiff now

---

[3] The requirements for a "severe" impairment are set out in 20 C.F.R. § 416.920(c).

[4] Sedentary work involves lifting no more than ten pounds and occasionally lifting or carrying articles and small tools. (Tr. at 492.) Furthermore, sedentary jobs include walking and standing occasionally. (Tr. at 492.)

9

seeks review of the Commissioner's determination.

## II.     Standard of Review

The Court's review of the Commissioner's determination is limited to two inquiries.  See 42 U.S.C. § 405(g).  First, the Court must determine whether the Commissioner applied the correct legal standard.  See Tejada v. Apfel, 167 F.3d 770, 773 (2d Cir. 1999); Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998); Shane v. Chater, No. 96-CV-66, 1997 WL 426203, at *4 (N.D.N.Y July 16, 1997) (Pooler, J.) (citing Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987)).  Second, the Court reviews whether the Commissioner's findings are supported by substantial evidence within the administrative record.  See Tejada, 167 F.3d at 773; Balsamo, 142 F.3d at 79; Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).  The Commissioner's finding will be deemed conclusive if supported by substantial evidence.  See 42 U.S.C. § 405(g); see also, Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991); Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984) ("It is not the function of a reviewing court to determine *de novo* whether a [Plaintiff] is disabled.  The [Commissioner's] findings of fact, if supported by substantial evidence, are binding.") (citations omitted).  In the context of Social Security cases, substantial evidence consists of "'more than a mere scintilla'" and is measured by "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  Although the reviewing court must give deference to the Commissioner's decision, the Act is ultimately "'a remedial statute which must be "liberally applied"; its intent is inclusion rather than exclusion.'"  Vargas v. Sullivan, 898 F.2d 293, 296 (2d Cir. 1990) (quoting Rivera v. Schweiker, 717 F.2d 719, 723 (2d Cir. 1983)).

10

**III.   Discussion**

    **a.   The Medical Opinion of Dr. Miriam Ragab**

Plaintiff argues that the ALJ erred in affording the opinion of Dr. Ragab "little weight." (Pl. Br. at 8.)[5] When evaluating medical opinions, and deciding whether a person is disabled, the court is to consider medical opinions together with all other relevant evidence. 20 C.F.R. § 416.927(b). Furthermore, the Commissioner's regulations state that a medical source's opinions in regard to the nature and severity of a person's impairment is to be given controlling weight if the opinion is supported by medically acceptable clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record. 20 C.F.R. § 416.927(d)(2). If the treating source's opinion is not given controlling weight, the ALJ must still consider the length of the treatment, the nature and extent of the treatment relationship, the frequency of the examination, the supportability of the opinion, and the consistency of the opinion in regards to the record as a whole. 20 C.F.R. § 416.927(d)(2).

A review of the ALJ's decision shows that his evaluation of the opinion of Dr. Ragab complies with the applicable regulations, as the ALJ provided a reasonable explanation for why Dr. Ragab's opinion was not given controlling weight. (Tr. at 490.) The ALJ stated that he considered the criteria in 20 C.F.R. § 416.927, but that the opinion of Dr. Ragab was not consistent with the clinical evidence nor was it consistent with the opinions of other doctors. (Tr. at 490.) Furthermore, the ALJ opined that Dr. Ragab appeared to rely more upon the subjective complaints of Plaintiff than any diagnostic or clinical evidence. (Tr. at 490.) As an example, Dr. Ragab was of

---

[5] "Pl. Br." refers to the Plaintiff's Memorandum of Law and Brief in Support of an application for Judgement on the Administrative Record.

the opinion that Plaintiff had decreased strength in her upper extremities if her back pain flared and that this limited her ability to reach more than occasionally. (Tr. at 478, 479.) However, the medical evidence showed that there was no limit to Plaintiff's strength in her upper extremities, that her strength was 5/5, she had a full range of movement, no muscle atrophy and no sensory abnormality. (Tr. at 392.)

Dr. Ragab opined that Plaintiff was able to lift or carry a limited amount of weight, that she could stand or walk at least two hours in an eight hour day, sit for up to six hours in an eight hour day, and that she could also occasionally push and pull. (Tr. at 490.) The ALJ also noted that Dr. Ragab stated that Plaintiff "NEEDS to work some to maintain her current state of well-being," and that the further opinion of the doctor was that Plaintiff could work part time, but not full time. (Tr. at 490, 676.) Dr. Ragab therefore believed that Plaintiff was able to carry out at least some work (Tr. at 676). However, the ultimate responsibility for deciding whether a Plaintiff is disabled and cannot work is afforded to the commissioner. 20 C.F.R. § 416.927(e).

The ALJ considered all the relevant factors required of him when evaluating Dr. Ragab's medical opinion. Accordingly, the ALJ adequately articulated his reasons for declining to afford controlling weight to the opinion of Dr. Ragab and properly found that his opinion was inconsistent with the substantial evidence of record. Therefore, in accordance with 20 C.F.R. § 416.927(d), the ALJ was entitled to give less controlling weight to this opinion.

  **b.**  **The Plaintiff's "Likely" Fibromayalgia**

Plaintiff assets that the ALJ erred in failing to evaluate her fibromyalgia and should have recontacted the treating sources for more information regarding the diagnosis of "likely fibromyalgia." (Pl. Br. at 9, 10.) A treating physician is recontacted only in situations when the

evidence received from the treating physician or other medical sources is inadequate for the ALJ to determine whether Plaintiff is disabled. 20 C.F.R. § 416.912(e). Here, the ALJ was able to determine through the submitted evidence that Plaintiff was not disabled. (Tr. at 490-93.) Additionally, the ALJ is only required to obtain additional evidence if he "cannot reach a conclusion about whether [Plaintiff is] disabled." 20 C.F.R. § 416.927(c)(3). The ALJ made a determination in this case based on evidence presented to him, including medical findings and medical opinions from Dr. Ragab opining that Plaintiff still had at least a limited ability to work in spite of her mild anxiety and diminished strength. (Tr. at 490.)

Furthermore, it is not enough that a plaintiff establishes that she has been diagnosed with a disease or impairment, but she must show that this particular disease or impairment is "of such severity that [she] is not only unable to do [her] previous work but cannot . . . engage in any other kind of substantial gainful work which exists in the national economy." Rivera v. Harris, 623 F.2d 212, 215-16 (2d. Cir. 1980). The ALJ considered Dr. Ragab's opinion of Plaintiff's ability to perform some work consisting of light or sedentary jobs (Tr. at 490), in light of Plaintiff's "likely fibromyalgia" diagnosis (Tr. at 227).

The fact that Plaintiff was unable to show that she could not engage in any type of gainful work, taken into consideration with the fact that the ALJ had enough evidence to decide whether Plaintiff was disabled, means that there was no reason to recontact the physician and, therefore, the ALJ did not err in failing to further evaluate Plaintiff's fibromyalgia.

  **c.** **Development of the Record in Regard to Plaintiff's Educational Limitations**

Plaintiff asserts that the ALJ erred in failing to properly develop the record in regards to her educational limitations. (Pl. Br. at 11.) Plaintiff specifically claims that the ALJ only asked what

13

grade level Plaintiff completed and did not further question her regarding the types of classes she took and her ability to read or write. (Pl. Br. at 11.) Furthermore, Plaintiff testified that she failed two or three attempts at receiving her GED, and claims that the ALJ should have followed up on this information to "determine why [it] happened." (Pl. Br. at 11.)

Plaintiff claims that it was the burden of the ALJ to develop the record regarding her education. (Pl. Br. at 11.) However, the regulations clearly provide that the is the claimant's burden to develop the record regarding education. See 20 C.F.R. § 416.912(c)(2). Furthermore, the requirements on how the Commissioner evaluates a Plaintiff's education is set out in 20 C.F.R. § 416.964(b):

> Formal education that you completed many years before your impairment began, or unused skills and knowledge that were a part of your formal education, may no longer be useful or meaningful in terms of your ability to work. Therefore, the numerical grade level that you completed in school may not represent your actual educational abilities. These may be higher or lower. However, if there is no other evidence to contradict it, we will use your numerical grade level to determine your educational abilities. The term education also includes how well you are able to communicate in English since this ability is often acquired or improved by education.

Here, Plaintiff was 44 years of age at the time of her 2004 SSI application, and had not been in school since the eighth grade, (Tr. at 487), or taken any educational courses since her attempts at obtaining her GED (Tr. at 705). Due to the fact that her formal education had been completed before the onset of her medical problems and pain, her education was no longer relevant to her ability to work, and the inquiry now turned to the numerical grade level. See 20 C.F.R. § 416.964(b). The ALJ did inquire about Plaintiff's grade level at the hearing. (Tr. at 705.) Plaintiff did not provide any information to contradict her grade level as a representation of her educational abilities. Plaintiff was able to complete her own forms in regards to her SSI application (See Tr. at

112-19, 144, 152-53, 162-65, 170). Plaintiff indicated that she was able to speak English, read English and write more than her name in English (Tr. at 152). The record establishes that Plaintiff was enrolled in regular education classes during her schooling (Tr. at 383). Therefore, the ALJ properly established Plaintiff's educational abilities based on the numerical grade level that she completed.

The ALJ did not have the burden to ask Plaintiff specific information regarding her education, and he properly discerned her educational abilities through her highest numeric grade level completed. Therefore, the ALJ did not fail to develop the record in regards to Plaintiff's educational limitations.

### d. Plaintiff's Residual Functional Capacity and Her Ability to Perform Sedentary Work

Plaintiff asserts that the ALJ's determination that Plaintiff is capable of sustained sedentary employment is not supported by the evidence in the record. (Pl. Br. at 12.) The RFC is what work a claimant is capable of doing in spite of her impairments and is determined by considering all relevant evidence, which consists of "physical abilities, symptoms including pain, and descriptions, including that of the claimant, of limitations which go beyond symptoms." Dwyer v. Apfel, 23 F. Supp.2d 223, 227 (N.D.N.Y. 1998) (citing 20 C.F.R. § § 404.1545(a), 416.945(a)). The determination of a claimant's RFC is based on all relevant medical evidence, and is reserved solely for the ALJ. 20 C.F.R. §§ 416.946(c), 404.1545.

Aside from the medical evidence set for above, the ALJ's finding of sedentary work is supported by the non-medical evidence. (Tr. at 490.) The ALJ's finding that Plaintiff could do sedentary work are reinforced by Plaintiff's testimony when she conceded that she is able to lift ten

pounds (Tr. at 672) and concerning her extensive daily activities (Tr. at 712-14). During the hearing before the ALJ, Plaintiff testified that she lives on a second floor apartment, that almost on a daily basis she makes her bed, cleans the bathroom, showers, cooks from scratch, grocery shops, does dishes, vacuums, walks three blocks to the Laundromat, does crossword puzzles, and watches television. (Tr. at 705, 712-14.) These activities contradict Plaintiff's allegations of disability.

Based on the medical evidence and the hearing testimony regarding Plaintiff's daily activities, the Court finds that the ALJ's conclusion that Plaintiff has the residual functional capacity to perform sedentary work, limited to work that has light lifting or carrying and involves sitting with a small amount of walking and standing, is supported by substantial evidence.

## IV. Conclusion

In reviewing disability claims, a district court may affirm, modify, or reverse the determination of the Commissioner with or without remanding the case for a rehearing. See 42 U.S.C. § 405(g). For the reasons previously stated, the Court finds that the ALJ's decision is supported by substantial evidence. Accordingly, the Commissioner's motion for judgment on the pleadings is granted, Plaintiff's motion is denied, and the determination of the Commissioner is AFIRMED.

**IT IS SO ORDERED**

DATED: September 28, 2009

Thomas J. McAvoy
Senior, U.S. District Judge